UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MTM DEVELOPMENT CORPORATION, and PRESERVE PROPERTY MANAGEMENT COMPANY, LLC,<br>    *Plaintiffs*,<br><br>v.<br><br>CAVALIER HOMES, INC. d/b/a CLAYTON TINY HOMES, CAVALIER HOME BUILDERS, LLC, CMH MANUFACTURING, INC., and ABC CORPORATIONS 1-5,<br>    *Defendants* | CA No. _____ |

## **COMPLAINT**

Plaintiffs, MTM Development Corp. and Preserve Property Management Company, LLC (collectively "Plaintiffs") bring the following Complaint against Defendants Cavalier Homes, Inc. d/b/a Clayton Tiny Homes, Cavalier Home Builders, LLC, CMH Manufacturing, Inc., and ABC Corporations 1-5 (collectively "Defendants") and alleges as follows:

### **PARTIES**

1. MTM Development Corporation is a Rhode Island corporation with a principal business address of 87A Kingstown Road, Wyoming, RI 02898.

2. Preserve Property Management Company, LLC is a Rhode Island limited liability company with a principal business address of 87 Kingstown Road, Wyoming, RI 02898.

3. Cavalier Homes, Inc. d/b/a Clayton Tiny Homes, is a Delaware

1

corporation with a principal address of 5000 Clayton Rd., Maryville, TN 37804.

4.  CMH Manufacturing, Inc. is a Tennessee corporation with a principal business address of 5000 Clayton Road, Maryville, TN 37804.

5.  Cavalier Home Builders, LLC is a Delaware limited liability company.

6.  There is correspondence concerning the circumstances herein with one or more persons with a designercottages.com email address. It is unclear to Plaintiffs whether designer cottages is a business entity separate from the named Defendants.

7.  There is correspondence concerning the circumstances herein with one or more persons with a cavhomesinc.com email address. It is unclear to Plaintiffs whether cav homes is a business entity separate from the named Defendants.

8.  ABC Corporations 1 through 5 are fictitious entities to represent any additional entities involved in the conduct giving rise to this Complaint but are unknown to the Plaintiffs. As these defendants are identified, Plaintiffs intend to amend this Complaint to include them.

## JURISDICTION AND VENUE

9.  This Court has personal jurisdiction over the Defendants because each is registered to do business in Rhode Island or has sufficient minimum contacts with Rhode Island.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because

there is diversity of citizenship and the amount in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint happened in or are connected to this District.

**FACTS**

12. Defendants are merchants with respect to tiny homes or small modular homes.

13. Plaintiffs purchased five manufactured "tiny homes" from Defendants.

14. Preserve Property Management Company, LLC obtains or sought to obtain rental income from the tiny homes.

15. The purchase orders do not clearly identify the seller.

16. The purchase orders show Clayton Tiny Homes or Cavalier Home Builders, LLC as the seller.

17. Plaintiffs wired some or all of the purchase price to CMH Manufacturing, Inc.

18. Defendants delivered the units to Plaintiffs in Rhode Island.

19. The first unit, a Low Country model with the identification number of 4C9AA4240KA432117, was delivered on or around June 5, 2019 ("First Unit").

20. The purchase price of the First Unit was $109,364.00.

21. The second unit, a Saltbox model with the identification number of 4CAA4748KA432116, was delivered on or around June 7, 2019 ("Second Unit").

22. The purchase price of the Second Unit was $114,922.00.

23. The third unit, a Low Country model with the identification number of 4C9AA4242KA432118, was delivered on or around June 14, 2019 ("Third Unit") (First Unit, Second Unit and Third Unit collectively the "Initial Units").

24. The Initial Units were delivered with several construction deficiencies and damages that were sustained in the course of their deliveries.

25. The Initial Units were of substandard quality and poor workmanship.

26. Defendants acknowledged that the Initial Units had construction deficiencies.

27. Defendants acknowledged that the Initial Units were of substandard quality.

28. Defendants acknowledged that the Initial Units had damages that were sustained in the course of their deliveries.

29. Defendants performed a site visit in Rhode Island to review the Initial Units.

30. Because of the construction deficiencies, delivery damages, and substandard quality of the first three units, Plaintiffs held off on ordering more units.

31. Plaintiffs and Defendants agreed on a resolution to address the construction deficiencies, delivery damages, and substandard quality of the first three units ("Settlement Agreement").

32. According to the Settlement Agreement, Defendants were to (a) pay Plaintiffs $67,500 for Plaintiffs' labor to fix the deficiencies, damage, and poor quality; (b) issue a credit in the aggregate amount of $45,000 to be used on Plaintiffs' future purchased units, at $15,000/unit over the next three purchased units; (c) purchase and deliver to Plaintiffs the materials to fix the first three units; and (d) allow the Plaintiffs to personally inspect and approve the future ordered units.

33. In or around November 2019, Plaintiffs traveled to Defendants' manufacturing facility in Alabama to inspect the quality of manufactured units and select the next units Plaintiffs were purchasing.

34. Defendants built a unit for Plaintiffs and allowed Plaintiffs to inspect it for quality (the "Inspected Unit").

35. Plaintiffs inspected the Inspected Unit and were satisfied with the construction quality and finish of the Inspected Unit displayed to Plaintiffs at that time.

36. Plaintiffs and Defendants agreed that Plaintiffs would purchase the Inspected Unit.

37. After Plaintiffs agreed to purchase the Inspected Unit, without Plaintiffs' knowledge or consent, Defendants sold the Inspected Unit to

5

another customer.

38. Defendants promised that Plaintiffs' future purchased units would be of the same characteristics, quality, and finish as the Inspected Unit.

39. In reliance on Defendants' promise, Plaintiffs purchased a Low Country model with the identification number of 4C9AA4246LA432141 ("Fourth Unit") and a Saltbox model with the identification number of 49TTH12471A432150 ("Fifth Unit").

40. The purchase price of the Fourth Unit, inclusive of the $15,000 credit, was $99,481.00.

41. The purchase price of the Fifth Unit, inclusive of the $15,000 credit, was $104,066.00.

42. The Fourth Unit was delivered on or around June 25, 2020.

43. The Fifth Unit was delivered on or around July 10, 2020.

44. The Fourth Unit and Fifth Unit were delivered with gross construction deficiencies and/or damages that were sustained in the course of their deliveries.

45. The Fourth Unit and Fifth Unit were of substandard quality and poor workmanship.

46. The Fourth Unit and Fifth Unit failed to conform to the quality and workmanship of the sample Inspected Unit.

47. After delivery of the Fourth Unit and Fifth Unit, Defendants gave Plaintiffs a partial refund in the amount of $56,597.40 for the damages

incurred during delivery and for the then apparent construction deficiencies in the Fourth Unit and Fifth Unit.

48. Several months after delivery and operation of the five units, the water heaters and heating systems of each of the five units began to fail.

49. Plaintiffs learned that the water heaters and heating systems of the five units were not suitable for year-round use and not suitable for Rhode Island's varying climate.

50. Prior to Plaintiffs' purchasing the Initial Units, the Fourth Unit, and the Fifth Unit (collectively, the "Units"), Defendants represented to Plaintiffs that their respective mechanical features were suitable for year-round use in Rhode Island's varying climate.

51. The Units and their mechanical features, such as their heating systems and water heaters, are not suitable for year-round use or for Rhode Island's climate.

52. Several months after delivery and operation of the Units, other construction deficiencies and defects were discovered, such as defective windows and a defective roof scupper causing water to leak into a unit.

53. Plaintiffs also discovered that the insulation and vapor barriers used in all of the Units were not suitable for year-round use and not suitable for Rhode Island's varying climate.

54. Defendants knew or should have known that the Units were being purchased by Plaintiffs for use in Rhode Island's varying climate.

55. Defendants knew or should have known that Plaintiffs planned to use the Units as short or long-term rental units upon Plaintiffs' property.

56. The cost of repairs and loss of income from loss of use of the Units far exceeds any refunds and credits that Defendants gave to Plaintiffs.

**COUNT I – BREACH OF EXPRESS WARRANTY**
**COMMON LAW AND § 6A-2-313**
**(4TH AND 5TH UNITS)**

57. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

58. Defendants expressly warranted that their units were luxurious, high-quality tiny homes.

59. Defendants warranted that their units were "designed by [a] renowned architect[,]" and that they have "extensively researched building codes," "tested for durability and sustainability[,]" and "developed a luxurious, world-class line of small modular homes fashioned with quality materials and specialty brands."

60. Defendants' warranty of quality, luxury, and conformance with superior building standards and codes was part of the Plaintiffs' basis of the bargain.

61. Defendants expressly warranted that the Fourth Unit and Fifth Unit were suitable for year-round use in Rhode Island's climate.

62. Defendants failed to conform the Fourth Unit and Fifth Unit delivered to Plaintiffs to Defendants' warranties of quality materials,

8

conformance with building codes, durability, sustainability, and luxury.

63. The Inspected Unit, presented to Plaintiffs by Defendants specifically to confirm the quality of materials and construction constitutes an express warranty of quality.

64. The Inspected Unit that was presented to Plaintiffs was a sample or model that was made part of the basis of the bargain.

65. The Inspected Unit was a sample or model creating an express warranty that the Fourth Unit and the Fifth Unit were to conform to the sample or model.

66. The Fourth Unit and Fifth Unit did not conform to the Inspected Unit.

67. The Fourth Unit and Fifth Unit were not suitable for year-round use in Rhode Island.

68. The Fourth Unit and Fifth Unit do not conform to Defendants' express warranty of quality and standards.

69. Plaintiffs have been damaged by Defendants' conduct, including without limitation, delivering the Fourth Unit and Fifth Unit in defective condition and without conformance to Defendants' express warranties.

70. Plaintiffs have been and continue to be damaged by Defendants' breaches of warranty, in an amount to be proven at trial, including, but not limited to, loss of use of the units, loss of rental income, and costs to repair the construction defects and damages sustained in transit of the units.

## COUNT II – BREACH OF IMPLIED WARRANTY
## COMMON LAW AND § 6A-2-314
## (4TH AND 5TH UNITS)

71. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

72. Defendants impliedly warranted that their units were luxurious, high-quality tiny homes.

73. Defendants impliedly warranted that the Fourth Unit and Fifth Unit would be suitable for the Rhode Island climate.

74. The Inspected Unit that was presented to Plaintiffs was a sample or model that was made part of the basis of the bargain.

75. The Inspected Unit was a sample or model creating an implied warranty that the Fourth Unit and the Fifth Unit were to conform to the sample or model.

76. The Fourth Unit and Fifth Unit did not conform to the Inspected Unit.

77. Defendants delivered the Fourth Unit and the Fifth Unit with defects that would not pass in the trade under the contract description for luxury tiny homes and make these units unfit for the ordinary purpose for which they were to be used.

78. Defendants breached their implied warranties concerning the Fourth Unit and Fifth Unit.

79. Plaintiffs have been damaged by Defendants' conduct, including

without limitation, delivering the Fourth Unit and Fifth Unit in defective condition.

80. Plaintiffs have been and continue to be damaged by Defendants' breaches of warranty, in an amount to be proven at trial, including, but not limited to, loss of use of the units, loss of rental income, and costs to repair the construction defects and damages sustained in transit of the units.

**COUNT III – BREACH OF WARRANTY - FITNESS FOR A PARTICULAR PURPOSE – COMMON LAW AND § 6A-2-315
(ALL UNITS)**

81. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

82. Plaintiffs intended to use the Units as rentals on their property in Rhode Island available as short-term or long-term rentals year-round.

83. Defendants warranted that the Units would be suitable for the Rhode Island climate year-round.

84. Defendants warranted that the Units would be fit for the particular purpose of using the Units as short-term or long-term rentals.

85. Defendants warranted that the Units would be fit for year-round use in Rhode Island.

86. Defendants knew or should have known that the Units would be used for rentals.

87. Defendants knew or should have known that the Units would be used throughout the year on Plaintiffs' property in Rhode Island.

88. Plaintiffs relied upon Defendants' expertise and representation that the Units would be built to state and local building code requirements, including specific construction and design elements based on the wind and thermal zone where Plaintiffs' property is located.

89. Plaintiffs relied upon Defendants skill, judgment, and expertise when Defendants suggested the particular units and constructed those units for Plaintiffs' use.

90. Defendants failed to build the Units to be fit for the purpose of short-term or long-term rentals.

91. Defendants failed to build the Units to be fit for the purpose of year-round use in Rhode Island.

92. Defendants failed to build the Units to be fit for the purpose according to state and local building code.

93. Defendants failed to include specific construction and design elements based on the wind and thermal zone where Plaintiffs' property is located.

94. Plaintiffs have been and continue to be damaged by Defendants' breaches of warranty, in an amount to be proven at trial, including, but not limited to, loss of use of the Units, loss of rental income, and costs to repair the construction defects and damages sustained in transit of the Units.

**COUNT IV – BREACH OF WARRANTY**
**(ALL UNITS – Latent Defects)**

95. Plaintiffs incorporate by reference the allegations above as if fully

set forth herein.

96. The Units' heating system and water heater failures are latent defects that were discovered by Plaintiffs only after the Units were operable and were exposed to colder temperatures that are reasonably anticipated for Rhode Island climates.

97. The Units' insulation and vapor barriers, which are not Rhode Island code compliant, are latent defects that were discovered by Plaintiffs only after the Units were operable and were exposed to colder temperatures that are reasonably anticipated for Rhode Island climates.

98. Defendants warranted that the Units were suitable for year-round use in Rhode Island's climate.

99. Defendants breached their warranty by delivering units that are not suitable for year-round use in Rhode Island's climate.

100. Plaintiffs have been and continue to be damaged by Defendants' breaches, in an amount to be proven at trial, including, but not limited to, the costs to repair the Units, loss of use of the Units, loss of rental income, costs to replace the heating systems and water heaters, and costs to winterize the Units to the elements of Rhode Island's climate.

**COUNT V – BREACH OF THE DUTY OF GOOD FAITH § 6A-1-304**

101. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

102. Defendants had the duty to perform their duties in good faith.

103. Defendants misled the Plaintiffs into purchasing the Fourth Unit and Fifth Unit based on Defendants' promise that Plaintiffs were to receive the Inspected Unit and a subsequent unit of the same quality as the Inspected Unit.

104. Once Plaintiffs agreed to purchase the Fourth Unit and Fifth Unit, Defendants sold the Inspected Unit to a third-party and delivered to Plaintiffs defective and damaged units of inferior quality in comparison to the Inspected Unit.

105. Defendants' misrepresentations to Plaintiffs and sale of the Inspected Unit are a breach of Defendants' obligation of good faith and fair dealing.

106. Plaintiffs have been and continue to be damaged by Defendants' bad faith performance of the Settlement Agreement in an amount to be proven at trial, including, but not limited to, loss of use of the Units, loss of rental income, costs to replace the heating systems and water heaters, and costs to winterize the Units to the elements of Rhode Island's climate.

### COUNT VI – BREACH OF CONTRACT
### (4TH AND 5TH UNITS)

107. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

108. Plaintiffs and Defendants entered into one or more contracts for the purchase of the Fourth Unit and the Fifth Unit that were to conform to the sample Inspected Unit.

109. Defendants had an obligation to construct the Fourth Unit and the Fifth Unit to conform to the sample Inspected Unit.

110. Defendants had an obligation to deliver the Fourth Unit and Fifth Unit without defect, construction deficiencies, or damage.

111. Defendants had an obligation to construct the Fourth Unit and Fifth Unit in accordance with commercially reasonable quality and workmanship.

112. Defendants had an obligation to deliver the Fourth Unit and Fifth Unit with heating/cooling systems that could sustain year-round use and Rhode Island's climate.

113. Defendants breached the contract(s) by failing to perform their contractual obligations.

114. Plaintiffs have been damaged by Defendants' breaches in an amount to be proven at trial, including, but not limited to, (a) the costs to repair the construction defects and deficiencies and the damages caused by delivery, (b) the costs to remediate the poor-quality workmanship, (c) the loss of rental income, and (d) the costs to replace the heating systems and water heaters.

## COUNT VII – BREACH OF CONTRACT

115. Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

116. Plaintiffs and Defendants entered into a Settlement Agreement.

117. According to the Settlement Agreement, Defendants were obligated to sell Plaintiffs the specific unit that Plaintiffs inspected and chose to purchase.

118. Defendants breached their obligation to Plaintiffs by selling the Inspected Unit to another buyer.

119. Defendants breached the Settlement Agreement by failing to deliver to Plaintiffs the Inspected Unit as Plaintiffs' Fourth Unit.

120. Defendants breached the Settlement Agreement by failing to deliver to Plaintiffs a Fourth Unit and a Fifth Unit that conformed to the quality of the Inspected Unit.

121. Plaintiffs have been damaged by Defendants' breaches in an amount to be proven at trial.

## COUNT VIII – PROMISSORY ESTOPPEL

122. Plaintiffs incorporate by reference the allegations above if fully set forth herein.

123. Defendants made a clear and unambiguous promise to Plaintiffs that Plaintiffs would be able to choose the units it wished to purchase after inspecting the quality of such units and that Defendants would sell Plaintiffs the chosen units of good quality and commercially reasonable workmanship.

124. Plaintiffs relied upon Defendants promise when Plaintiffs traveled to Alabama to inspect units and hand select which units it was purchasing for its Fourth Unit and Fifth Unit.

125. Plaintiffs relied upon Defendants promise when Plaintiffs entered into the Settlement Agreement in attempt to remediate the deficiencies, damages, and poor quality of the first three units.

126. Defendants made a clear and unambiguous promise to Plaintiffs that, even though Defendants sold Plaintiffs' hand-picked Inspected Unit, the quality of construction of the Fourth Unit and Fifth Unit would equate to the quality of the Inspected Unit.

127. Plaintiffs would not have purchased the Fourth Unit and Fifth Unit but for Defendants promises.

128. Plaintiffs' reliance on Defendants' promises was reasonable.

129. Plaintiffs were damaged by their reliance on Defendants' promises in an amount to be proven at trial, including but not limited to (a) the costs to repair the construction defects and deficiencies and the damages caused by delivery, (b) the costs to remediate the poor-quality workmanship, (c) the loss of rental income, and (d) the costs to replace the heating systems and water heaters.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

WHEREFORE, Plaintiffs respectfully request that judgment enter in their favor, including the following:

    a. All damages at law or in equity;
    b. Pre-judgment and post-judgment interest on any monetary damage award;

   c. Attorney's fees and costs, including pursuant to R.I. Gen. Laws § 9-1-45;

   d. Punitive damages; and

   e. Such other relief as the Court deems just.

MTM DEVELOPMENT CORPORATION and PRESERVE PROPERTY MANAGEMENT COMPANY, LLC,

By their attorneys,

<u>/s/ Andre S. Digou</u>
Richard J. Land (5592)
Andre S. Digou (8711)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, Rhode Island 02903
Tel: (401) 453-6400
Email: adigou@crfllp.com
       rland@crfllp.com
Dated: May 10, 2024