# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| |
|---|
| MTM DEVELOPMENT CORPORATION, and PRESERVE PROPERTY MANAGEMENT COMPANY, LLC, *Plaintiffs*, v. CAVALIER HOMES, INC. d/b/a CLAYTON TINY HOMES, CAVALIER HOME BUILDERS, LLC, CMH MANUFACTURING, INC., and ABC CORPORATIONS 1-5, *Defendants* |

CA No. 1:24-cv-00181-WES-PAS

## **PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR LEAVE TO TAKE RULE 30(b)(6) DEPOSITIONS**

Plaintiffs MTM Development Corporation and Preserve Property Management Company, LLC (collectively, "Plaintiffs") hereby object to Defendants' Motion (ECF 31) for leave to take purportedly "limited" Rule 30(b)(6) depositions. Although Defendants characterize the requested depositions as narrow and threshold in nature, the Motion and accompanying deposition notices reveal an effort to conduct sweeping, disproportionate, and abusive discovery that exceeds the boundaries of Fed. R. Civ. P. 30(b)(6) and 26(b)(1). The Motion should be denied in its entirety.

Alternatively, however, if the Court is inclined to permit any discovery, it should be limited to written questions, the proposed topics substantially narrowed, and strict limitations imposed to prevent discovery abuse.

*"The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest."*[1]

**INTRODUCTION**

This case is not about a data breach; it concerns Defendants' substandard products. See ECF 1. Plaintiff ordered five tiny homes from Defendants and paid more than $500,000 for them. Id. Defendants delivered each unit late and riddled with defects and poor workmanship. Id. Plaintiff filed a Complaint for breach of warranty, breach of contract, and breach of good faith. Id.  Plaintiff seeks damages for the costs to repair the construction defects, repair of damages sustained in transit, loss of use, and loss of rental income. Id.

Defendants served interrogatories and requests for production, to which Plaintiff responded. Defendants moved to compel supplemental responses. The parties conferenced with the Court, Defendants were forced to narrow their overly broad requests, and Plaintiff was directed to serve supplemental responses on the narrowed requests. Plaintiff timely complied.

Unsatisfied with the damages information Plaintiff already produced and supplemented, including an excel spreadsheet of Plaintiff's lost profit calculation and a pdf of all rental amounts from 2022 forward, Defendants

---

[1] Centurylink Communications LLC v. Peerless Network, Inc., 2020 WL 11647818, *3 (N.D. Ill. 2020)(quoting Robinson v. Stanley, 2010 WL 1005736, *5 (N.D. Ill. March 17, 2010)).

2

now demand that Plaintiffs designate and prepare one or more witnesses to testify on 19 sweeping topics (many more when including subparts) for two organizations under the guise of a self-manufactured need for "discovery about discovery." See ECF 31-5 and 31-6. Additionally, Defendants demand that the two organizations produce in connection with the depositions every document, report, memorandum, communication, insurance policy, record, log, protocol, and policy. Id. Not only is Defendants' demand for abusive, expensive, and time-consuming "discovery about discovery" emblematic of Defendants' approach to this case—deny, distort, and defend by needlessly increasing litigation costs—it lacks reasonable particularity, is burdensome, disproportionate to the needs of the case, and unnecessary.

Defendants contend they are entitled to discover every shred of customer and rental information under the guise of defending/exploring Plaintiffs' "damages" claims. Plaintiffs already produced the documents they have concerning rentals. Plaintiffs do not have customer or rental data for the initial period the units were rented because of a data breach. Plaintiffs expressed the same to Defendants and the Court.[2]

---

[2] To provide more background, Plaintiffs contracted Ocean House Management, LLC ("OCM") to manage certain hospitality services for Plaintiffs, including administration of reservation systems, rate setting assistance, and providing systems for recordkeeping and reporting. OCM suffered a data breach, which impacted Plaintiffs' rental data, and further refused to return other data to Plaintiff. The dispute between Plaintiff and OCM was the subject to litigation in Rhode Island Superior Court and an arbitration proceeding before the American Arbitration Association. The dispute with OCM was resolved through a settlement agreement that contains confidentiality and

3

Plaintiffs conferred with Defendants and expressed that (1) the discovery appeared aimed at harassing Plaintiffs rather than for a legitimate purpose, (2) Plaintiffs are prepared to supply an affidavit that the rental data was lost and not recovered concerning the period in question, (3) Defendants should serve written discovery on the issue rather than expensive and time-consuming depositions, and (4) Defendants could ask data breach questions in the substantive 30(b)(6) depositions because it would not take much time for Plaintiffs to testify that the data was lost and not recovered.

Defendants refused to modify their discovery or accept an affidavit concerning the data breach and insisted on pressing the vacuous 30(b)(6) depositions.

**ARGUMENT**

Defendants posit only three reasons to support their insatiable quest for information. First, Defendants claim they need the discovery "to challenge the assertion that responsive information was, in fact, lost to a data breach." ECF 31, p. 4. Second, Defendants claim they need the discovery "to understand what data remains or potentially could be resurrected or replicated." ECF 31, p. 4. Third, Defendants speculate that "such discovery could result in disclosure of alternative sources for responsive information

---

non-disclosure provisions covering the settlement and the details of the dispute. But, Plaintiffs did not recover their rental data for the initial period the tiny homes were available.

4

through subpoenas or depositions." Id. The Court should reject these meager justifications for numerous reasons.

### 1. THE PROPOSED RULE 30(b)(6) TOPICS ARE FACIALLY OVERBROAD AND LACK REASONABLE PARTICULARITY

Rule 30(b)(6) requires that deposition topics be described "with reasonable particularity." Fed. R. Civ. P. 30(b)(6). The notices proposed by Defendants fail this threshold requirement. See ECF 31-5 and 31-6.

Rather than identifying discrete factual matters, the notices seek testimony regarding all information systems, all categories of financial and reservation data, and all damages-related materials across multiple years, without meaningful limitation as to time, custodian, system, or subject matter. "If the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task. Trustees of Boston University v. Everlight Electronics Co., Ltd., 2014 WL 5786492, *3 (D. Mass. 2014)(citing McBride v. Medicalodges, Inc., 250 F.R.D. 581, 584 (D. Kansas 2008)). Topics framed to encompass "all systems," "all data," or the entirety of a party's damages evidence are classic examples of improper Rule 30(b)(6) notices. See Federal Ins. Co. v. Delta Mechanical Contractors, LLC, 2013 WL 1343528, *4 (D.R.I. 2013).

Here, the Defendants' topics, which include language such as 'any,' 'all,' and 'including but not limited to,' are virtually impossible to comply with. Id. These types of topics are "precisely the sort of overbroad Rule 30(b)(6) notice that subjects the noticed party to an impossible task." Id. (citing Reed v.

5

Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) ("including but not limited to" language in Rule 30(b)(6) notices are patently overbroad and impossible to comply with)); see also Trustees of Boston University v. Everlight Electronics Co., Ltd., 2014 WL 5786492 at *3.

Defendants' overreach is compounded by the circular and self-expanding definitions of "Data Breach," "Discovery Material," and "Damages Evidence." See ECF 31-5 and 31-6. These definitions are drafted to gain unlimited inquiry into every category of electronically stored information and damages-related material in the case, including information never lost, never requested, or already produced. Furthermore, by defining "Discovery Material" to include any information responsive to any discovery request "regardless of any objection," Defendants improperly attempt to nullify Plaintiffs' objections by definition. This tactic cannot overrule Plaintiffs' objections or expand the permissible scope of Rule 30(b)(6) testimony and independently warrants denial of the Motion.

Since Defendants' open-ended topics are incompatible with Rule 30(b)(6)'s reasonable-particularity requirement, the Court should deny the Motion.

### 2. THE REQUESTED DEPOSITIONS ARE DISPROPORTIONATE AND UNDULY BURDENSOME

Defendants seek leave to conduct what they label "limited" Rule 30(b)(6) depositions concerning a data breach. The depositions, however, are not limited. The noticed topics would require Plaintiffs to prepare corporate

6

witnesses on virtually every aspect of their information-technology infrastructure, cybersecurity practices, internal communications, insurance coverage, and historical data retention—matters far afield from the needs of this case and grossly disproportionate under Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(1) limits discovery to that which is proportional to the needs of the case. Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

First, the depositions are not important to resolving the issues. Fed. R. Civ. P. 26(b)(1). This is a commercial dispute concerning Defendants' defective tiny homes. See ECF 1. No claim or defense turns on whether Plaintiffs maintained optimal systems, software, cybersecurity policies, notified regulators, engaged forensic consultants, or carried cyber insurance. Id. Defendants' noticed topics would require testimony on precisely those matters. For example, Topics 1–3 force Plaintiffs to prepare testimony regarding all information systems and vast categories of financial and reservation data, including third-party platforms, across multiple years. Topic 4 demands testimony on "policies, procedures, and protocols for cybersecurity." Topics 7 and 8 request testimony on notifications to law enforcement, regulators, and affected individuals. Topics 11 and 12 seek

7

communications with third parties and consultants. These topics might be appropriate if cybersecurity were in dispute, but they do not justify converting a case of poor workmanship into a wide-ranging inquiry into Plaintiffs' IT landscape.

Second, the burden and expense of preparing Plaintiffs' managerial-level staff, information technology staff, and hospitality staff to answer possible questions outweighs the benefit. Fed. R. Civ. P. 26(b)(1). Defendants' notices would require Plaintiffs to investigate, reconstruct, and educate witnesses on IT systems, data retention, backups, communications, and historical data—across two entities—merely to defend against speculative assertions that documents "might" once have existed and Defendants "might" uncover witnesses to subpoena. ECF 31, p. 4. Defendants do not need to know what Plaintiffs' information technology policies are to defend against Plaintiffs' claims for repair costs or lost profits.

Finally, the depositions are not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Rule 26(b) permits a court to limit discovery as not proportional to the needs of the case in light of, inter alia, the importance of the discovery to the issues." SEC v. Navellier & Associates, Inc., 2019 WL 688164, *1 (D. Mass. 2019)(internal quotations and citations omitted). Defendants do not need separate depositions to achieve their stated goals of (a) challenging that the data was lost, (b) understanding what can be replicated, and (c) identifying alternative sources for subpoenas or

8

depositions. ECF 31, p. 4. These areas of inquiry can be explored during Plaintiffs' substantive 30(b)(6) depositions. Discovery is not closed, so if Defendants unearth the names of any groundbreaking witnesses to subpoena and depose about the data breach, they can do so without delay.

### 3. THE NOTICES IMPERMISSIBLY SEEK PRIVILEGED, EXPERT, AND LEGAL OPINION TESTIMONY

Many of the Defendants' topics are improper and, to the extent proper, can be resolved with contention interrogatories or expert discovery.

Rule 30(b)(6) permits discovery of non-privileged factual knowledge; it does not authorize inquiry into attorney-client communications, work product, legal conclusions, or expert opinions. See Fed. R. Civ. P. 26(b)(1). Furthermore, a "party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through contention interrogatories and/or expert discovery." Trustees of Boston University v. Everlight Electronics Co., Ltd., 2014 WL 5786492, *4 (D.Mass. 2014)(citing SmithKline Beecham Corp., 2004 WL 739959, at *2).

In this case, topics 6–12 seek testimony regarding internal communications, forensic investigations, consultants, and remediation efforts. Preparing testimony on these subjects would necessarily rely on privileged communications and work product. Topics 13–18 impermissibly seek legal decisions concerning discovery scope, relevance, and sufficiency by demanding testimony about what "Discovery Materials" or "Damages Evidence" were chosen, lost, or could be recreated. Rule 30(b)(6) cannot be

used to force a party to explain or defend its discovery positions. Cook v. Lynn and William, Inc., 344 F.R.D. 149, 156 (D. Mass. 2023). Similarly, topic 19 seeks technical ransomware-related testimony—encryption methods, ransom negotiations, and decryption keys—that is irrelevant and constitutes expert and legal opinion testimony outside the scope of Rule 30(b)(6).

### 4.  DEFENDANTS HAVE NOT SHOWN GOOD CAUSE

Defendants have not shown a need for data breach discovery. "A party seeking broader discovery of any matter relevant to the subject matter involved in the action,[3] is required to show good cause to support the request. In re Subpoena to Witzel, 531 F. 3d 113, 118 (1st Cir, 2008)(citing Fed. R. Civ. P. 26(b)(1)). Plaintiffs represented to the Defendants and Court that rental data was lost and are prepared to testify to the same. Defendants have not provided any reason to doubt Plaintiffs' statement to the Court.

In any event, Plaintiffs cannot offer as proof of damages information/data that Plaintiffs do not have. If Plaintiffs supply a witness to testify about rentals from the period of lost data, Defendants can cross-examine the witness and criticize the testimony provided. Similarly, if Plaintiffs offer an expert to testify about lost rental income, Defendants can cross-examine the expert and offer a competing expert. Finally, Plaintiffs already produced damages information, including (i) an excel spreadsheet showing

---

[3] Virtually all of Defendants' noticed topics are not relevant to any claim or defense but instead seek to uncover information about Plaintiffs information systems—which is not an issue in the case.

10

how Plaintiffs calculate lost rental income, and (ii) a pdf of all rentals from 2022 forward. Defendants can resort to ordinary litigation measures to rebut the documents produced.

Defendants have not shown any need for sprawling corporate depositions on "discovery about discovery," and Defendants' topics (in particular 6–18) exemplify precisely the type of fishing expedition courts reject.

### 5. DEFENDANTS' MOTION IS A TACTICAL MISUSE OF RULE 30(b)(6)

Defendants' notices reflect a tactical misuse of Rule 30(b)(6), aimed at curing perceived discovery deficiencies, obtaining advance impeachment material, and locking Plaintiffs into premature positions on evolving damages issues.

"The purpose of a Rule 30(b)(6) deposition is not to confirm or test the written discovery that a party has already provided." Cook v. Lynn and William, Inc., 344 F.R.D. 149, 156 (D. Mass. 2023). Defendants' use of Topics 13–18 to probe whether Plaintiffs' production is "complete" or whether additional damages evidence "should exist" exemplifies this improper tactic.

The notices also improperly seek to freeze Plaintiffs' damages case through premature corporate testimony, despite Rule 26(e)'s supplementation framework and expert discovery procedures. "Even under the present-day liberal discovery rules, the recipient of a Rule 30(b)(6) request is not required

11

to have counsel marshal[ ] all of its factual proof and prepare a witness to be able to testify on a given defense or claim." Id. at 154.

**CONCLUSION**

Defendants' proposed Rule 30(b)(6) depositions are a textbook example of discovery that fails the proportionality requirement. Although styled as "limited," the notices sweep far beyond any legitimate need, demanding testimony on virtually every aspect of Plaintiffs' information systems, cybersecurity practices, internal communications, insurance coverage, and historical data—subjects collateral to the claims and defenses actually at issue. Preparing corporate witnesses to address nineteen expansive topics (with multiple subparts) for two entities would impose a substantial burden and expense, while yielding, at best, marginal insight into damages information already addressed through document production and available for examination through ordinary merits discovery.

Here, the likely benefit is slight and the intrusion great. The issues in this case concern defects in manufactured homes, not Plaintiffs' IT cybersecurity or infrastructure. Whatever limited, factual clarification Defendants desire regarding the data loss can be obtained through far less burdensome means, including written discovery, affidavits, or focused questioning during substantive depositions.

For the reasons herein, and any given at a hearing on this matter, the Court should deny the Motion. In the alternative, Plaintiffs request that the Court (i) require Defendants' inquiry to proceed, if at all, by sworn declarations or written discovery; (ii) strike or substantially narrow the proposed Rule 30(b)(6) topics and definitions; (iii) limit any testimony to discrete, non-privileged factual issues; and (iv) prohibit inquiry into expert opinions, legal conclusions, or privileged communications.

PLAINTIFFS,

By their attorneys,

*/s/ Andre S. Digou*
Richard J. Land, Esq. (#5592)
Andre S. Digou, Esq. (#8711)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI  02903
Tel.: (401) 453-6400
Email: rland@crfllp.com
         adigou@crfllp.com
Dated: January 1, 2026

**CERTIFICATE OF SERVICE**

I certify that on January 1, 2026, I caused to be electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Andre S. Digou*